## THE E. LUCKENBACH.

(Circuit Court of Appeals, Fourth Circuit. May 2, 1899.)

### No. 299.

1. APPEAL IN ADMIRALTY—REVIEW OF FINDINGS OF FACT.

The decision of a trial court in admiralty upon questions of fact, based on the conflicting testimony of witnesses examined before the judge, will not be reversed on appeal, unless there is a decided preponderance of evidence against it.

2. COLLISION—STEAM AND SAILING VESSELS MEETING—CARE REQUIRED OF STEAM VESSEL.

It is the duty of a steam vessel, and especially of a tug with a tow, when meeting a sailing vessel where there is ample sea room, and the approaching vessel is seen at a distance, to keep at a sufficient distance in passing to avoid all danger, and to make allowance for the uncertainty in the movements of the sail vessel, which is unavoidable; and where she fails to do so, and a collision results, notwithstanding the keeping of her course by the sailing vessel until a moment before, she must be held in fault, and liable therefor, although the immediate cause of the collision may have been an improper movement of the sailing vessel in attempting to extricate herself from the dangerous position in which she was placed.

Appeal from the District Court of the United States for the Eastern District of Virginia.

In Admiralty.

Robert M. Hughes, for appellant.

Floyd Hughes, for appellee.

Thomas H. Willcox, for owner of barge.

Before GOFF, Circuit Judge, and MORRIS, District Judge.

GOFF, Circuit Judge. In the early morning of June 15, 1896, the schooner J. B. Van Dusen, bound from New York to Norfolk, light, and barge No. 2, of the New York, Philadelphia & Norfolk Railroad Company, then in tow of the tug E. Luckenbach, bound from Norfolk to Cape Charles, came into collision between Old Point and Thimble Light. The schooner, shortly after the accident, sunk on Hampton

Bar, and the libel in this case was filed against the tug and barge to recover for the damages occasioned by the collision. The J. B. Van Dusen was a three-masted schooner of about 222 tons burden, with a crew of six men, consisting of the master, mate, the cook, and three seamen, and was making about six miles an hour, with seven of her nine sails set. The wind was from the east, the night was clear, and the tide ebb. Her master was in command, and his watch, consisting of two seamen, one at the wheel and the other on the lookout, were at their respective stations. The lights, properly placed, were burning brightly. The tug E. Luckenbach was 90 feet long by 15 feet beam, with a crew of nine men, four of whom were on duty. The barge, which was 215 feet long by 42 feet beam, was in tow of the tug, and was loaded with freight cars. The tug and its tow were making about seven miles an hour. The libelant claimed that, as the vessels approached, they were showing their port lights to each other, and that when they were about 300 yards apart the tug changed its course so as to cross the schooner's bow, thereby showing for a short time to the navigators of the schooner both lights, and then shutting in its red light; that the schooner held her course until the vessels were about 100 feet apart, when she luffed under a starboard helm, and succeeded in clearing the tug; that the barge, which was 480 feet behind the tug, had not been able to change her course as rapidly as the tug, and was still showing her port light; that it was impossible for the schooner, situated as the vessels then were, to clear the barge by continuing under a starboard helm, and that, therefore, her master, in the hope of avoiding collision, put his vessel under a helm hard a-port, but that almost immediately after passing the tug the bow of the schooner came in contact with the starboard corner of the barge. The master of the tug claims, as does also the master of the barge, that the vessels approached each other green to green; that the schooner was a point and a half on the starboard bow of the tug, moving on a parallel course, with the barge exactly behind the tug; that the vessels would have cleared each other fully 400 feet, and no collision would have occurred, had not the schooner hard ported when about even with the tug, thereby running into the barge. The court below found that the barge was not at fault, and that the tug alone was responsible for the collision, and entered a decree in favor of the libelant for the damages caused thereby. From that decree this appeal is prosecuted.

There is the conflict in the testimony usually found in cases of collision, the contending interests being diametrically opposite in their claims, as well as in the testimony their respective representatives have given relative thereto. Of the tug's crew of nine men, four of whom were on duty at the time of the collision, only two were examined as witnesses. The entire crew of the schooner, as also of the barge, were produced and examined, either by deposition or in open court; the material witnesses on both sides testifying before the judge who decided the case below. Unless we find from the record that the decision is clearly against the evidence, we will not— as the questions of fact are to be ascertained from conflicting testi-

mony—reverse the decree of the judge in whose presence the evidence was given, who observed the witnesses, and noted their appearance and manner, and who was thereby aided in determining as to their credibility. The conduct of the witnesses when being examined, their demeanor under cross-examination, and their personal characteristics are material, and, unfortunately, cannot be carried into the record. Consequently the rule prevails in cases like this that the decree of the trial judge will not be disturbed upon mere questions of fact depending upon the credibility of witnesses who testified before him, unless there is found to be a decided preponderance of the evidence against the same. The Jersey City, 2 C. C. A. 365, 51 Fed. 527; The Warrior, 4 C. C. A. 498, 54 Fed. 534; The City of New York, 4 C. C. A. 268, 54 Fed. 181; The Alejandro, 6 C. C. A. 54, 56 Fed. 621; The S. S. Wilhelm, 8 C. C. A. 72, 59 Fed. 169; Davis v. Schwartz, 155 U. S. 631, 15 Sup. Ct. 237.

The conflict in the testimony was of the character not attributable to mistake, and we agree with the judge who heard the case, and conclude that he gave due consideration to, and properly solved, the same, when he found the tug alone was responsible for the collision. The vessels were in plain view of each other for at least two miles, the night was bright, and the sea open. We think it clear that the vessels approached showing their port lights to each other, and that the schooner, as it was her duty, kept her course. The vessels were quite close to each other when passing,—evidently within a hundred feet. The tug should have not only kept out of the way of the schooner, but sufficiently far from it to avoid dangerous proximity, and not interfere with its movements by causing alarm and doubt, keeping in view the contingencies of navigation. With the best of handling, the movements of a sailing vessel are uncertain, and a steamer approaching it will, if properly navigated, make sufficient allowances for such uncertainties and the contingencies flowing therefrom. If it fails to do so, it must suffer the consequences, and pay the damages caused by such carelessness. Even if the sailing vessel should, in an endeavor to escape from the danger so caused, resort to an improper movement, and be clearly guilty of an error in management, still the steamer, as it had the ability to keep away, is liable for the result, because responsible for the original fault of the dangerously near approach. Spencer, Mar. Collis. 209–211; Haney v. Packet Co., 23 How. 287; The Carroll, 8 Wall. 302, 305; The Falcon, 19 Wall. 75.

In this case the tug, according to the testimony of the master, permitted the schooner to approach within 480 feet, upon such close parallel courses as to render passing dangerous, without changing its course; and this, when the master had observed the sail vessel over two miles off, and when he was in a channel free to the westward for over a mile, and to the eastward without limit, with no other vessel near, whereby navigation could be obstructed. The schooner kept her course (at least until danger was imminent), as it was proper for her to have done. She could not make her own selection, because the law had made it for her. The tug could have changed her course either to the eastward or to the westward, and have thereby given

the schooner a safe margin. The fact that the tug had the barge in tow enhanced the danger of passing the sail vessel, and required a degree of caution which was not observed. Bigelow v. Nickerson, 17 C. C. A. 1, 70 Fed. 113; The Maverick, 75 Fed. 845; The Marguerite, 87 Fed. 953.

The tug should have watched the progress and direction of the schooner, should have taken into consideration all the circumstances of the situation, and have so governed herself as to have guarded against peril to either the schooner, the barge, or herself. Other questions are raised by the assignments of error, and were discussed by counsel, but, finding as we do concerning the facts existing at the time of the collision, they become immaterial, and we do not think it necessary to consider them. The decree appealed from is affirmed.