## THE ANACES.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1901.)

### No. 362.

1. ADMIRALTY—APPEAL—REVIEW OF FINDINGS OF FACT.

   Findings of fact by a court of admiralty are presumptively correct, and, while reviewable on appeal, where they are made on conflicting testimony given in the presence of the judge his conclusion will be treated with great respect.

2. SHIPPING—INJURY OF STEVEDORE—LIABILITY OF SHIP.

   Libelant, who was employed by stevedores, and engaged with others in stowing cotton in the hold of a ship, was injured by the rolling against him of bales of cotton lowered by the winchman upon those lying under the hatchway. Held, that in the absence of evidence to sustain allegations of the incompetence of the winchman to which the libel charged the injury, or to establish any improper or unskillful act on his part, the ship could not be held liable for the injury.

Appeal from the District Court of the United States for the Eastern District of North Carolina.

Iredell Meares, for appellant.

Harrington Putnam (George Rountree, on the brief), for appellee.

Before GOFF and SIMONTON, Circuit Judges.

SIMONTON, Circuit Judge. This case comes up on appeal from the decree of the district court of the United States for the Eastern district of North Carolina, sitting in admiralty. The libel was filed by Alexander McCollum against the British steamship Anaces, then lying in the port of Wilmington, N. C. McCollum was a member of

a gang of stevedores engaged in loading the steamship Anaces with cotton. The cotton was put on board by means of steam winches. The bales of cotton were lying on the wharf. Three or four bales would be put into a sling, and then hoisted, by means of a block and tackle operated by the winch, over the side of the ship and over the hatch, and then let down into the hold. The man at the winch managed it under the direction of one of the stevedore's gang on the deck, who gave the orders to hoist and to lower away. He could not see into the hatch, and his duties were, as some of the witnesses express it, those of an automaton. On the 5th October, 1897, McCollum was at work in No. 2 hold, with several others of the gang, engaged in stowing the bales as they came down into the hold. The work had been going on from the early morning. Between 12 and 1 o'clock the cotton was lying at the bottom of the hold, loosely piled; when a sling full of bales was let down into the hold on the top of this pile, and disengaged several of them, which rolled over; one of them striking McCollum, pinning him against the side of the ship and injuring him seriously. The winches used in putting cotton into the hold were being operated under the general direction of one Andrew Brown, and the winch used in putting the cotton into this hold No. 2 was operated by Curtis Croom, who had been selected by Brown. Croom had been in charge of the winch from 7 o'clock in the morning. The libel charges that Croom was an incompetent person, that the injury to the libelant was caused wholly by his unskillful management of the winch, and that, owing to the negligence and carelessness of the master of the ship in employing him, libelant was hurt. He seeks damages for this. The cause was heard by the district court, the witnesses having been examined in the presence of the judge. Weighing the testimony, more or less conflicting, the court was of the opinion that libelant had not proved his case, and the libel was dismissed. 96 Fed. 856. An appeal was allowed, and the cause is here on 15 assignments of error. These all go to errors in the findings of fact.

When conflicting evidence has been submitted to a court charged with finding the facts of a case, its conclusions thereon are taken as presumptively correct. Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764; Furrer v. Ferris, 145 U. S. 132, 12 Sup. Ct. 821, 36 L. Ed. 649. Mr. Justice Brown, in Davis v. Schwartz, 155 U. S. 631, 15 Sup. Ct. 237, 39 L. Ed. 289, states the rule with its limitations. After stating that the conclusions of fact are presumptively correct in the finding by the referee, the special verdict of a jury, the findings of a circuit court in a case tried by the court without a jury, under Rev. St. § 649, or in an admiralty cause appealed to the supreme court, he adds:

"In neither of these cases is the finding absolutely conclusive,- -as, for instance, if there be no testimony to support it. But so far as it depends upon conflicting testimony or upon the credibility of witnesses, or so far as there is any testimony consistent with the finding, it must be treated as unassailable."

The same rule has been applied in admiralty in some of the courts. The Parthian (C. C.) 48 Fed. 564; The Albany, Id. 565,—in Massa-

chusetts; The Alejandro, 6 C. C. A. 54, 56 Fed. 621, 15 U. S. App. 103. We have not gone to this extent in this circuit. But we have uniformly held that, while the findings of the court below on questions of fact can be reviewed in this court (City of Cleveland v. Chisolm, 33 C. C. A. 157, 90 Fed. 431; The Philadelphian, 9 C. C. A. 54, 60 Fed. 423), the conclusion of the district judge on a conflict of evidence is entitled to, and is treated with, great respect. The Lucy and The Spring Garden, 20 C. C. A. 660, 74 Fed. 572, 42 U. S. App. 100; The Bowden, The Decatur H. Miller, and The Venus, 24 C. C. A. 267, 78 Fed. 649, 42 U. S. App. 374; The E. Luckenbach, 35 C. C. A. 628, 93 Fed. 841.

The testimony has been carefully reviewed, and this court has reached the same conclusion with the court below. The master of the ship, a stranger in the port of loading, consulted the firm, which was largely engaged in the export trade, and under their advice employed Brown to superintend the winches and to employ his assistants. Brown engaged Curtis Croom, with whose competency he was acquainted, and whom he had employed on previous occasions. In this respect the master showed no negligence. Some of the witnesses for libelant say that complaint was made to the captain of the incompetency of Croom. The testimony they gave did not impress the trial judge, nor does it impress this court.

Great stress is laid in the testimony, and has been insisted on in argument, upon the inexperience and unskillfulness of Curtis Croom, the winchman. The question in the case is, was the accident caused by any improper or unskillful act of Curtis Croom? The testimony shows that Croom was, at the winch, an automaton, acting solely upon the signal of the stevedore, Isler, on deck. The duty of this man was to tell him when to put on the winch and when to release the cotton. Croom swears that Isler gave him the signal to lower away as he got the cotton over the hold. All agree that the bales were lowered regularly, and that they did not fall into the hold. To this point Croom and Isler are the only witnesses. The complaint is that Croom, without orders, lowered the cotton. Isler, in his testimony, says that he did not give the signal,—any signal. But, if he was attending to his duty, he could not have avoided seeing the cotton when it came over the side of the ship and rose to the point over the hold, and nothing could have been easier than to give the winchman directions to hold. But he says that he said nothing at all to him. The burden of his testimony is the general incompetency of Croom. The crucial fact seemed to escape his attention. Yet on cross-examination the admission is wrung from him that Croom continued at the winch for days after the accident, and that the same gang of stevedores continued to work in the same hold. It was incumbent on libelant to prove his case. This he has failed to do. The decree of the district court is affirmed.