BAKER-WHITELEY COAL CO. OF WEST VIRGINIA v. NEPTUNE NAV. CO., Limited.

(Circuit Court of Appeals, Fourth Circuit. February 3, 1903.)

No. 471.

1. ADMIRALTY—APPEAL—REVIEW OF FINDINGS OF FACT.
     Where the objection on appeal to a decision in admiralty is that it is based on a fact found by the lower court, the decision will not be reversed unless it clearly appears that there was error.

2. TOWAGE—INJURY OF TOW—LIABILITY OF TUG.
     A steamship lying in a slip without steam up employed a tug to take her out and move her to another location, a service which required especial care because of the presence of other vessels in the slip. The tug borrowed a hawser from the ship, which broke, and the ship was injured by striking against a pier. *Held*, that the tug, which was in her home port, was bound to provide herself with proper equipment, and could not charge the injury in whole or in part to the fault of the ship on the ground that the hawser was insufficient.

Appeal from the District Court of the United States for the District of Maryland, in Admiralty.

¶ 1. See Admiralty, vol. 1, Cent. Dig. § 770.

Before GOFF, Circuit Judge, and BRAWLEY and PURNELL, District Judges.

J. Wilson Leakin, for appellant.

Robert H. Smith, for appellee.

PURNELL, District Judge. In June, 1900, the steamship Queen Wilhelmina, the Neptune Steam Navigation Company, Limited, owner, was lying in a slip or dock at Pier 32, Baltimore, Md., bows to the mainland, stern to the open water, and another ship 100 or 150 feet astern, in the same dock. The Queen Wilhelmina had discharged her cargo, and it was desired to move her to Elevator No. 3 at Canton. For this purpose the steam tug Britannia, owned by the Baker-Whiteley Coal Company of West Virginia, the respondent below (appellant here), was employed. The Wilhelmina had no steam. She was a steamship 360 feet long and about 42 feet beam. There was very little wind, and what there was drifted down the dock. The other steamship in the dock was 100 or 150 feet immediately astern on the same side of the dock, and there was about 80 feet between her and the opposite side of the dock, Pier 31, for the Queen Wilhelmina to pass. The tug came into the dock through the passageway between the other steamship and Pier 31, and threw her hawser to the Wilhelmina, which was made fast to the port quarter. Those on the Wilhelmina were asked for another rope or hawser, and passed a seven-inch manilla hawser, which was also made fast, connecting the ship and tug. The tug then steamed ahead, pulling the stern of the Wilhelmina across the dock, in which direction it was found the stern of the ship was making too much headway, when the tug, to check this momentum, steamed in an opposite direction, tightening the hawser which had been obtained from the steamship, with the result that it parted, and that the propeller of the steamship struck some part of Pier 31 on the opposite side to where she had been lying, causing the injury complained of to the propeller and shaft, described in the libel. The contention of appellant is that the controversy turns on the strength and age of this hawser. There is conflicting testimony as to the age and condition of the manilla hawser obtained from the steamship; some witnesses testifying it was new and sufficient, others that it had been in use two, three, or four months. In addition to the depositions taken, witnesses were examined in open court, and on the final hearing the following decree was entered:

"This cause having been heard and duly considered by the court, and the court having found that the respondent is liable to the libelant for damages claimed in these proceedings, it is adjudged, ordered, and decreed by the court this 17th day of June, 1902, that the respondent, the Baker-Whiteley Coal Company of West Virginia, pay to the libelant, or its proctor, within ten days from the date of this decree, the sum of three thousand six hundred and nine dollars and seventeen cents ($3,609.17), and the costs to be taxed in this case, with interest on said sum after said ten days."

Appellant filed six assignments of error as follows:

"First. For that the court refused to find that the collision was solely caused by the insufficientcy of the rope provided by the steamship Queen Wilhelmina, which was attached to the port quarter of the said steamship and the tug Britannia at the time of the collision. Second. Because the

court refused to find that the said hawser was too old and worn for the purpose of connecting the said tug and steamship. Third. Because the court found that the tug Britannia, owned by the Baker-Whiteley Coal Company, was solely in fault for said collision. Fourth. For that the court refused to find that all of the damage to the tail-end shaft of the steamship Queen Wilhelmina was caused by other reasons than the collision of the said steamship with the pier in the port of Baltimore. Fifth. Because the court found that the said damage to the tail-end shaft of the steamship Queen Wilhelmina was sustained by reason of its collision with the pier. Sixth. For that the court refused to find that the steamship Queen Wilhelmina was solely in fault for the said collision."

The assignments of error 1, 2, 4, and 6 are to the refusal of the court to find facts which a careful examination of the record shows would not have been justified by the evidence, which, in fact, justifies a contrary finding to that contended for by appellant. The fifth assignment is the converse of the fourth, to wit, the court found the damage to the tail-end shaft was caused by reason of its contact with the pier. It is a well-established rule in admiralty that, where the objection on appeal to a decision is that it is based on a fact found by the lower court, the decision will not be disturbed or reversed unless it clearly appears that there was error. The Circuit Court of Appeals of the Ninth Circuit in Jacobsen v. Expedition Co., 50 C. C. A. 126, 112 Fed., at page 78, cites this rule as applicable where there was conflicting testimony, and cites a great many decisions; among others a recent decision by this court—The Anaces, 45 C. C. A. 596, 106 Fed. 742—in which this court cites the rule as laid down by the Supreme Court in Davis v. Schwartz, 155 U. S. 631, 15 Sup. Ct. 237, 39 L. Ed. 289, where the rule, with its limitations, is stated. In the opinion of this court (at page 597, 45 C. C. A., and at page 744, 106 Fed., it is said:

"We have uniformly held that, while the findings of the court on questions of fact can be reviewed in this court, the conclusion of the District Court on a conflict of evidence is entitled to and treated with great respect."

The argument on the hearing and the briefs filed are devoted exclusively to a discussion of the age and condition of the hawser borrowed from the steamship by the tug. Tugboats are not common carriers, but still a high degree of care and efficiency is required of them in the discharge of the duties which they undertake, and they should be duly equipped for such services. Such equipment includes sufficient hawsers. There was no special danger in the work required of the tugboat Britannia. There was no sea, no high winds, no shoals, or other incidents usually accompanying the towage of large vessels, but it was a service requiring especial care. The port was the home port of the tug, where the required equipment could have been obtained. The ship was in a dock the mouth of which was partly blocked by another ship that extended about one-third across it, thus allowing a narrow passage for the Wilhelmina to be towed through. The testimony shows that the tug was not properly equipped with hawsers, and that it was compelled to borrow one from the steamship. Instead of allowing the ropes which made the ship fast to the pier to remain for the purpose of steadying or checking the headway across the dock, the stern lines seem to have been cast off, and the tugboat gave to the

stern of the ship a momentum which it afterwards attempted to check, going in the opposite direction under a full head of steam, thereby causing the hawser to part, which resulted in the loss complained of. The steamship was helpless, and entirely dependent on the tug. For this reason alone the tug was employed, because, with her own steam, the Wilhelmina might have backed out and gone to the elevator where it was desired she should be. Under these circumstances—and they are abundantly proved by a mass of testimony—it would be an unjust, unsupported conclusion to hold that the steamship was even partially liable for the injury.

The decree of the District Court is affirmed.