## THE DELMAR et al.

### (District Court, E. D. Virginia. August 8, 1903.)

1. COLLISION—STEAM AND SAILING VESSELS—PRESUMPTION OF FAULT.

    In case of a collision between a sailing vessel and a barge in tow of a tug, on which rested the duty of keeping out of the way, all the presumptions are in favor of the sailing vessel.

2. SAME—EVIDENCE CONSIDERED.

    A collision occurred at night in Chesapeake Bay between a schooner coming into Hampton Roads, and a barge 342 feet long, loaded with freight cars, which was passing out in tow of a tug on a hawser 300 feet long. There was a strong wind, and the vessels were admittedly on parallel courses until shortly before the collision, the tug passing to windward of the schooner. Each vessel claimed that she made no change in her course, and the testimony from each supported her contention. There was plenty of sea room, and the tug could have given the schooner a wider berth than she admittedly did. *Held* that, under the evidence, she must be charged with the sole fault for the collision.

In Admiralty. Suit for collision.

Hughes & Little, for libelant.
T. H. Willcox and Floyd Hughes, for respondents.

WADDILL, District Judge. The collision in this case occurred in Chesapeake Bay, near the mouth of Hampton Roads, on the evening of the 1st of March, 1903, about 7:45, at a point about halfway between Old Point Comfort and Thimble Light, between the R. M. Graham, a three-masted schooner, and barge No. 5 of the New York, Philadelphia & Norfolk Railroad Company, then in tow of said railroad company's steam tug Delmar. The night was dark, tide ebb, and wind blowing a strong breeze from the north. The course of the Graham was west by south half south, and of the tug northeast by east. The schooner, loaded with lumber, was coming into Hampton Roads for anchorage, and the barge, loaded with cars, was being towed to Cape Charles, on her regular trip between Norfolk and that place; the vessels, respectively, making between six and seven miles an hour. The faults assigned by the parties, respectively, one against the other, are such as that each places the responsibility for the collision entirely upon the other; the schooner, in effect, charging that she was proceeding on her regular course, with the red lights of the tug exhibited to her, and the red lights of the schooner exhibited to the tug, until within a short distance of the tug, and when too late to avoid the collision by any movement on her part, the tug suddenly starboarded, and ran across the schooner's bow, bringing the barge into collision with the schooner, whereby she sustained damage to the extent of $9,084; whereas the respondent's account of the collision is as follows:

"After passing Old Point, the wind was blowing heavily from the north northeast. The night was very dark. The tug and barge were on their proper and usual course to pass to the west of the Thimble, the tug towing the barge on a hawser of about fifty fathoms in length. While thus running, making between six and seven miles an hour, the lights of three sailing vessels were sighted ahead, seemingly on schooners bound in, two of them showing their red lights on her port bow, and one, which afterwards turned out to be the schooner Graham, showing her green light to the tug and barge; the green light on the tug and barge being also visible to her. The schooners were apparently bound in for Hampton Roads, while the tug and barge were bound out, and the courses in which they were moving at that time were practically parallel, and there was nothing to suggest any danger or risk of collision. The vessels continued to move in this direction. The green light of the Graham broadened on the starboard bow of the tug until the tug had passed the schooner to port, and was about abeam of the Graham, when the Graham, for what purpose respondent is unable to say, rapidly changed her course by porting her helm, causing her to luff, and come into the barge, striking her starboard bow on the starboard of the barge, aft of amidships, and receiving the injury complained of."

The respective contentions of the parties are supported by the crews of the vessels in collision, and the evidence is irreconcilably conflicting as to just how the accident happened, as it is evident, if the vessels approached each other, each exhibiting the same lights,—that is, green to green, or red to red,—as they insist they did, no collision could have occurred, unless there was a change of course on the part of one or other of the vessels. This conflict, in the view taken by the court of the law governing the case, need not necessarily be determined to ascertain the liability, though the court strongly inclines to adopt the schooner's version as to the circumstances of the collision, and as to the lights that were exhibited by one vessel to the other at

the time. It is highly improbable that the Graham, on whom was imposed the burden of keeping on her course, would have made the change contended for at the time it is claimed it was made; and the circumstances strongly favor the contention that the navigators of the tug, in their endeavor to keep their usual course, so as to pass through the swash channel on the west of Thimble Light, and avoid passing round the light, in the existing condition of the weather, took greater chances than otherwise would or should have been taken. Certain it is, they make no claim of having changed their course in the slightest respect in the conditions surrounding them, and insist that none was necessary. It will not be readily assumed that a vessel charged with the duty of keeping her course would, if in the position claimed by respondent, have purposely made such a maneuver as inevitably to bring her into collision with another vessel, and impose upon her the responsibility for so doing. It is far more probable that the collision occurred by reason of the tug's master, upon whom was imposed the burden of keeping out of the way, making a mistake in the navigation of his vessel, when he found himself in a position of dangerous proximity to the Graham. Haney v. Baltimore S. P. Co., 23 How. 287, 291, 16 L. Ed. 562. The collision being between a sailing vessel and a steam vessel and tow, the law imposed upon the latter certain obligations, one of which was to keep out of the way of the sailing vessel, and in the collision between them the presumptions are all in favor of the sailing vessel. Spencer on Marine Collision, 212, 213; The Belgenland (D. C.) 5 Fed. 89; The Richmond (D. C.) 114 Fed. 208, 210; The Ardanrose (D. C.) 115 Fed. 1010, 1012.

The respondent's evidence is to the effect that the schooner's green light was seen as far as a mile or more away, and that the two vessels exhibited their green lights one to the other, and proceeded on their respective courses, until the tug was about abeam of the schooner, and about 200 yards away, when the schooner suddenly changed her course, luffed, and run across the course of, and into, the barge. This was a chance of collision that should not have been taken by the tug, and for which there was no excuse. It was not enough that the tug should have avoided a collision, but she should have avoided the risk of collision; and to proceed so closely on the course of the Graham, under the circumstances of this case, at the speed the vessels were respectively going, and in the then condition of the weather, on a dark night, having in tow an ocean-going barge 342 feet in length, 46 feet beam, and a hawser 300 feet in length, loaded with freight cars, as to involve probable danger of collision, when there was no reason for so doing, was a risk that it assumed, and must bear the consequences thereof. The Carroll, 8 Wall. 302, 19 L. Ed. 392; The Falcon, 19 Wall. 75, 22 L. Ed. 98; The New York, 175 U. S. 187, 207, 20 Sup. Ct. 67, 44 L. Ed. 126; The Luckenbach, 93 Fed. 841, 842, 35 C. C. A. 628; Wilders S. S. Co. v. Low, 112 Fed. 161, 166, 171, 50 C. C. A. 473; Hughes Ad. 291.

The tug's navigators evidently failed to take into account, and make proper allowance for, the effect of the then prevailing wind on a barge of the kind and length this was. There was ample searoom for the tug to have made any maneuver she saw proper, and there was noth-

ing in the condition of the weather that prevented her navigators from avoiding the collision, by the proper exercise of care and forethought on their part, whether the Graham was proceeding with her red lights showing, as claimed by her, or proceeding with the green lights showing, as contended by the respondent. If the Graham was exhibiting her green light, and the same was seen at the distance admitted by the respondent, then there was no reason, from the tug's standpoint, why she should not have starboarded, and gone to windward, so as to give safe fairway to the Graham, as the tug admits that the other two sailing vessels coming in and ahead of the Graham were a mile or more away to the windward; whereas, if the Graham was showing her red light, as she contends she was, so as to throw all three schooners to the windward of the tug, then there was not the slightest reason why the tug should not have ported, and gone to leeward, thereby passing under the Graham's stern, and en route on her course. Assuming the Graham did make a wrong maneuver, as claimed by respondent, and improperly changed her course, thereby bringing about the accident, her conduct, under the circumstances of this case, and in the emergency in which she was placed, should be treated as an error in extremis, and not avail to relieve the respondent from liability, since the collision resulted from the dangerous navigation of the steam vessel. The Lucille, 15 Wall. 676, 21 L. Ed. 247; The Luckenbach, 93 Fed. 843, 35 C. C. A. 628.

In the view taken by the court of the evidence in this case, the collision resulted solely from the fault of the tug, and a decree may accordingly be entered, so ascertaining the liability.