# COURT OF COMMON PLEAS OF BALTIMORE CITY.

Filed October 21, 1911.

BAKER-WHITELEY COAL COMPANY
VS.
AMERICAN TOWING AND LIGHTERING COMPANY.

*J. Craig McLanahan* for plaintiff.
*Gans & Haman* for defendant.

BOND, J.—

The defendant urges two grounds in support of the motion:

1. One ground is that the verdict was against the weight of the evidence, and against all the evidence, in finding, as it necessarily did, that the contract for towing out, of which the case arose, was a divisible contract for services during the voyage, so that compensation might be recovered, notwithstanding the scows were not brought to Baltimore. After reviewing the evidence I have been unable to adopt the conclusion that this was against the weight of the evidence, or against the evidence. That the parties may intend and make such a divisible contract, even when the tows are to be conveyed from one given port to another, is clearly settled by the decision on appeal, reported in 111 Md., 504. Starting from that point, I feel unable to say that the jury might not reasonably have concluded from the evidence on the last trial that the parties did not intend an entire contract on the part of the tug to bring the scows to Baltimore at all hazards; and so I have concluded their verdict cannot be set aside on that ground.

2. The second ground urged is that the court, in its modifications of the defendants' third, fourth and fifth prayers, gave the jury an erroneous measure of the plaintiff's obligation and liability in the furnishing of its equipment for the work of towing.

In the third prayer, as it was originally drawn, the latter portion made the defendant unconditionally liable for failure to provide sufficient appliances for the towing; and the court modified this portion of the instruction, so as to make the obligation only that of exercising reasonable skill and care to provide such appliances. In this particular prayer the modification seems to be in accordance with the abstract statement of law with which the prayer begins.

Again in the fourth prayer the modification similarly reduced the obligation to the exercise of ordinary skill and care to provide such appliances.

And in the fifth prayer the liability of the plaintiff for any defect which may have existed in the hawser, was made, by the modification, to depend upon failure to exercise ordinary care and skill to anticipate the defect.

Against the view expressed in these modifications it is urged that while the obligation in regard to the actual work of towing may be only that of ordinary care and skill, yet in regard to the preliminary equipment of the tug to enable her to undertake such work, on the other hand, the plaintiff was under an implied warranty of its sufficiency, or, if not that, then at least under an obligation to exercise a high degree of care to have it sufficient.

The court was referred to some authorities, notably the case of "The Neptune;" 120 Fed., 247, 249, which say that a high degree of care is required of tugboats in the discharge of duties which they undertake, including in this the equipment of the boat with sufficient hawsers.

Another case which seems to support that view is Hyman vs. Nye, 6 Q. B., 685.

158

It is doubtful whether the courts in those cases had in mind any legal standard of obligation other than that of ordinary care under the circumstances. Such ordinary care might, as a matter of fact, be high or low, according as the circumstances might vary; it may be, indeed, according to the weather. A tugboat does not engage in any employment upon which the law has imposed the obligation of an insurer. It is not a common carrier. And there seems to be nothing in its relation to its tow which would except it from the broad general rule of ordinary care under the circumstances to be dealt with, which is the usual measure of obligation in the absence of an express undertaking to the contrary. And this appears to be the conclusion of the overwhelming weight of authority.

In whatever form the question comes up—whether as to seaworthiness, adequacy for the work, or the time of starting it is a practical question of reasonable prudence and judgment; and as regards seaworthiness in general, or the adequacy of the tug for the work undertaken, there is no other final criterion than the judgment of practical men versed in the business, and the customs and usages of the time and place. viewed as representing the judgment and knowledge of the time. To show this, the custom and practice of nautical men is admissible. The exercise of reasonal prudence and judgment, measured by this standard, does not exclude some remaining maritime risks. Against these it is the province of insurers to provide; otherwise the shipper is his own insurer."

The Allie & Evie, 24 Fed., 745, (Brown, J.).

"Neither the tug nor her owner are liable on account of the hawser or the use made thereof. It is urged that the owner guarantees the equipment of the tug; that is, that he engages absolutely that each line, rope, etc, when properly used, shall bear without breaking the strain made necessary by its office, caused by the ordinary violence of wind and weather, and that he will be liable for any damage happening under such conditions approximately from an unworthy sea line. It would be interesting to discover by what analogy or reasoning a tower not held to be a common carrier is regarded as an Insurer of his tug's equipment."

In re: Moran, 120 Fed., 556, 566.

Transportation Live vs. Hope, 95 U. S., 297.

Steamer Webb, 14 Wall, 406, 414.

The L. C. Dayton, 120 U. S., 337, 351.

The J. P. Donaldson, 167 U. S., 599, 603.

The Britannia, 148 Fed., 495, 497.

The Merrimac, 2 Sawyer, 586, 593.

Varble vs. Bigley, 29 Amer. Rep., 437.

Caton vs. Rumney, 13 Wend., 387.

Leonard vs. Hendrickson, 18 Penn. St., 40.

The modifications seem to have given the correct legal measure of the tugboat's obligation, as defined by these authorities.

The motion for a new trial will, as a result of the above conclusions, be overruled.