THE SCOW NO. 27.

THE JOHN A. HUGHES.

No. 5670.

Circuit Court of Appeals, Fourth Circuit.

Dec. 12, 1947.

R. Arthur Jett, of Norfolk, Va. (Leo F. Hanan, of New York City, on the brief), for appellant.

John W. Oast, Jr., of Norfolk, Va., for appellees.

Before PARKER and DOBIE, Circuit Judges, and CHESNUT, District Judge.

DOBIE, Circuit Judge.

Norfolk Dredging Company filed a libel in admiralty against the steam tug John A. Hughes and the Wood Towing Corporation in the United States District Court for the Eastern District of Virginia, seeking to collect damages for the loss of libelant's mud scow. From a decree of the District Court dismissing the libel, the libelant has appealed to us.

On the night of May 7, 1943, the tug Virginia was proceeding on a Northerly course in the Elizabeth River, near Norfolk. The port side of the tug was made fast to the mud scow No. 27, which was loaded with dredged matter. This wooden scow which was square ended, with a flat deck, was about 131 feet long, 36.3 feet beam and had a draft of about 11 feet. The bow of the scow projected about forty feet beyond the bow of the tug.

The tug John A. Hughes, proceeding Southwardly, had in tow three barges, in the order named: the Pensacola, the Lottie Shaw and Liquid No. 1. While the Lottie Shaw was light, the Pensacola and Liquid No. 1 were loaded. The Lottie Shaw had a freeboard of about 23 feet and the top of the house on the deck was about 43 feet above the water. Liquid No. 1 with an amidship freeboard of about 8 inches, had a deck house about 6 feet high at the stern.

The port bow corner of the mud scow collided with the port bow corner of Liquid No. 1. As a result of the collision, Liquid No. 1 broke loose from the tow but the mud scow, after having been pushed some distance, capsized and sank. At the time of the accident, the tide was near slack with a current of about five-tenths of a mile, and there was a 15 or 20 mile wind in the South or Southwest. At the point of collision, the channel was approximately 750 feet wide.

The tug John A. Hughes passed the tug Virginia at a safe distance and no whistles were blown. But the Virginia and the mud scow passed dangerously close to the Lottie Shaw (the second boat in the Hughes tow) and then, in spite of last minute efforts on the part of the Virginia to turn to the East, the mud scow (as has been indicated) collided with Liquid No. 1. The District Court found (on adequate evidence) that all the vessels "had their lawful lights properly placed and brightly burning." On the tug John A. Hughes were lights indicating a long tow, while Liquid No. 1 had horizontal lights showing that it was the last vessel in the tow.

Of course, the libelant had the burden of proving negligence on the part of the tug Hughes or her tow, and that such negligence contributed to the collision. We think the District Court was correct in holding that the libelant has failed to sustain this burden.

There was the usual conflict of testimony, common to vessel collisions. The District Court is the primary judge of the credibility of witnesses and we can set aside that court's findings of fact only when these findings are clearly erroneous. In spite of libelant's contentions to the contrary, we think the controlling questions in this case are questions of fact rather than questions of law. See The District of Columbia, 4 Cir., 74 F.2d 977, 103 A.L.R. 768; The Corapeake, 4 Cir., 55 F.2d 228; The E. Luckenbach, 4 Cir., 93 F. 841.

The Virginia had no lookout. Her Captain admitted that he did not see the lights on Liquid No. 1 until he was almost abreast of the stern of the Lottie Shaw; he also admitted that he did not see any

horizontal lights on the Lottie Shaw, which fact should have told him that the Lottie Shaw was not the last vessel in the tow. There was evidence that, when questioned immediately after the collision, he stated: "I saw the two barges you had in tow, but I didn't see the scow." An alert lookout on the Virginia should certainly have observed the absence of horizontal lights on the Lottie Shaw, and when he saw the Virginia and the scow approaching close to the Lottie shaw, he should have reported these facts to the Captain of the Virginia in time to have averted the collision. See, the John G. McCullough, D.C., 232 F. 637.

It is not necessary for us to decide whether the Hughes or the Virginia, or either of them, was technically the burdened vessel. It is manifest, however, that the Virginia, with a lashed scow, could navigate more freely and change course more quickly than could the Hughes with three vessels in a long tow.

■ Much is made by counsel for libelant of the length of the tow of the Hughes, which was about 1,200 feet overall, and of Section 18 of the Rules and Regulations of the Board of Harbor Commissioners for the Port of Norfolk, Portsmouth and Norfolk County forbidding tows which exceed 700 feet in length. Opposing counsel insist that this local regulation was superseded by the Act of Congress, 33 U.S.C.A. § 152. We deem it unnecessary to pass on the validity of this local rule because we must uphold the finding of the District Court that the length of the tow of the Hughes had nothing to do with the collision, since the tug Hughes and the three vessels in her tow maintained a straight and proper course close to the buoys on the Western side of the channel. This finding, too, relieves us of discussing the lack of a bridle or double hawser or rudder on the Liquid No. 1, or the failure to shorten the hawser between the Lottie Shaw and Liquid No. 1.

■ The crux of this case seems to be the course of the tug Virginia and the course of the barge Liquid No. 1 just before the collision. Libellant, of course, claims that Liquid No. 1 sheered to her port; opposing counsel insist that the Virginia left the righthand (or Eastern) side of the channel and veered to her port, i. e., to the West. The District Judge found against the libelant. There is substantial evidence to support this finding, so we cannot set it aside as being clearly erroneous.

The testimony of Sawyer, Dozier, White and Treakle definitely established the tendency of the scow, lashed to the port side of the tug, to pull the tug Virginia to port. Thus Sawyer, the Master of the tug Virginia, testified: "Yes, sir, you have to hold your rudder more or less right to keep the weight of the scow—to overcome the weight of the scow pulling it to port and many times you veer over going down the channel. If you have got a course you have got to steer—in other words, from a half to three-quarters of a point to westward, or to eastward if you are going north, whichever side you have got your scow on * * *."

And White stated: "Well, you take any—not only a mud scow, but any heavy object alongside of a tugboat, the tugboat pushing on it, pushing it ahead, it is a known fact that she will what we call 'crab'; it will push her sideways. You take a tow, a tugboat with a tow alongside, my experience, you have to keep 10 or 15 degrees with a right rudder, and that certainly has a tendency to push the tow sideways."

This "crabbing" of the Virginia and her scow to port was, in the view of the District Judge, the primary cause of the collision.

There was evidence that Liquid No. 1 was equipped with skags to keep her on a straight course, that she was a good following vessel and had, therefore, been placed last in the tow, and that she maintained a proper course on her starboard (Western) side of the channel. Thus we must hold that the evidence which was believed by the District Judge offered ample warrant for the statement in his opinion: "* * * However the Liquid No. 1 was the last barge heavily loaded, which would have a tendency to hold the Lottie Shaw in line, and even if the Lottie Shaw veered toward the center of the channel, nevertheless the Liquid No. 1 would remain further to the West than the Lottie Shaw. I cannot believe that the Liquid No. 1 sheered and travelled at a greater rate of speed than the Lottie Shaw did, which it seems to me would have been necessary for her to have

done to have gotten to the point contended * * *."

The decree of the District Court is affirmed.

Affirmed.