## THE MAYUMBA. (Five Cases.)

*(District Court, S. D. New York. July 25, 1884.)*

COLLISION—TUG AND TOW—STEAMER UNINCUMBERED BOUND TO KEEP OUT OF THE WAY.

A steamer having easy and perfect command of her own movements is bound to keep out of the way of a cumbersome tow going slowly with the tide, where there is nothing in the way to prevent the steamer's doing so. The steamer M., coming up the bay, sighted a tug with a heavy tow on a hawser, going down, being altogether 800 feet long, and some two miles distant. She was at first

to the westward of the tow, but worked across to the eastward, and finally came in collision with the end of the port side of the tow. On contradictory evidence as to the place of collision, and whether the steamer was in motion or not, *held*, that the steamer had abundant room to avoid the tow on either side; and that whether she had stopped her engines or not, during a debate as to whether she should go to Red Hook or Brooklyn, she was equally at fault in not keeping out of the way of the tow.

In Admiralty.

*E. D. McCarthy* and *J. A. Hyland*, for libelants.

*Goodrich, Deady & Platt*, for claimants.

BROWN, J. On the third of December, 1882, at about 11 A. M., as the steamer Mayumba was coming up from quarantine, when not far from Bedloe's island, she met a large tow going down, and came into collision with the port side of it, near the end of the tow, whereby several of the boats and their cargoes were damaged, on account of which the above six libels were filed. The day was clear; the bay unobstructed; the wind fresh from the N. W., blowing about 14 miles per hour; the tide, the last of the ebb; the tow, running at about the rate of 3 to 3½ knots per hour through the water. The tow consisted of some 30 boats, in 5 or 6 tiers, attached by hawsers about 80 feet long to the two tugs, Wilbur and Halliard, so that the whole length of the fleet was about 800 feet. The tow left Jersey City at about 9:40 A. M., bound for Perth Amboy, via the Kills. Its course was first across the North river, to near the New York shore; thence to the south-eastward, to avoid some incoming vessels; thence down stream past Governor's island, and about a quarter of a mile to the westward of Castle William; and thence heading W. S. W., crossing the channel somewhat to the westward, towards the Jersey shore, to the northward of Robbins' reef.

There is great conflict in the testimony as to the place of the collision. The substantial claim of the defense is that the Mayumba had run as far to the eastward as she could safely go, having got to the easterly line of the channel, and to the edge of the flats off Red Hook. Her captain testifies that when he saw the collision impending he directed her tug, the Raymond, to shove her bows further eastward, but that the pilot in charge countermanded his order, saying: "Don't do that, captain; we are ashore now." The pilot died before the trial, and his testimony was not previously taken, to confirm any inference which might naturally be drawn from this remark as to their proximity to the east line of the channel. The language attributed to him is in form an exaggeration; and there are so many inaccuracies in the master's testimony that the other proofs cannot be suffered to be outweighed by an alleged statement by the pilot of this character, not substantiated by his own oath as to his language or its truth. The other proofs leave no doubt in my mind that the tow, at the time of the collision, was not near the flats referred to; but abreast of a point somewhere between Bedloe's island and Oyster island, and at least a quarter of a mile to the westward of the east-

erly line of the channel. The two tugs that had charge of the tow were fully able to handle it readily; it was not excessive or unusual in size; the wind was not more than a strong breeze, not approaching a gale; and there was no conceivable reason why the tow should have been along the easterly edge of the channel, but every reason to the contrary; since she was bound for the westerly side of the bay to the Kills, and all her witnesses state positively that she was not far from the middle of the channel, while the claimant's witnesses vary considerably in the position they give. I must hold, therefore, that there was plenty of room for the Mayumba to have gone on either side of the tow, as the libelant's witnesses testify.

The testimony of the Mayumba's own witnesses is contradictory as to whether the Mayumba was in motion or not at the time of the collision. The libelant's witnesses say that she was. It appears certain, however, that she was at first designed to land near Red Hook, and had been headed towards it, then crossing the tow's course, as the latter's witnesses testify; but that on account of the strong wind a debate ensued between her captain, her pilot, and the pilot of the tug-boat Raymond, which went down to help her, as to the advisability of going in to Red Hook, and that that design was abandoned, and that it was determined to go to Woodruff's stores, Brooklyn. This debate is stated to have lasted some 15 minutes, during which the Mayumba's speed was more or less checked. Some of her witnesses say that she was entirely stopped, and that while thus stopped the tow drifted down upon her. But whether her engines were stopped or not, I think she was equally at fault in getting and remaining in the way of the tow, when there was abundant room, as I find there was, on either side for her to have moved out of the way. The tow could not stop nor move much out of her course. The tug and tow were plainly visible several miles off; they were proceeding ahead at a moderate speed, and they did nothing to embarrass the Mayumba in keeping out of the way. If the latter was not bound under the rules to keep out of the way on account of her position, as alleged by the libelants, when near Robbins' reef, having the tow on her starboard hand, (which the Mayumba denies,) yet, from her perfect and easy command of her own motions, she was bound to keep away from the tow, when there was nothing to prevent her doing so. It clearly is no justification of her course to say that she steamed in front of the tug and tow, and then stopped until the latter drifted down upon her. It was her duty to exercise diligence in avoiding a collision, and I can see nothing to have prevented her easily doing so.

I cannot perceive any fault in the tug or tow, and consequently the Mayumba must be held liable. The true cause of the collision, as well as of many of the inaccuracies in the testimony of the Mayumba's most important witnesses, was, doubtless, the fact that they were so much occupied in discussing whether they should go to Red Hook or to Brooklyn that they paid too little attention to the tug and

tow to testify accurately concerning them, or to take timely measures to avoid them.

The libelants are entitled to decrees, with costs, and a reference to compute the amount of damages, if they are not agreed upon.