**COMPANIA DE MADERAS DE CAIBARIEN, S. A., Appellant,**

v.

**THE QUEENSTON HEIGHTS, etc., Esso Shipping Company, Claimant, Appellee.**

No. 15308.

United States Court of Appeals, Fifth Circuit.

March 17, 1955.

Rehearing Denied April 21, 1955.

Francis Emmett, René H. Himel, Jr., Eberhard P. Deutsch, Deutsch, Kerrigan & Stiles, New Orleans, La., for appellant.

Walter Carroll, Terriberry, Young, Rault & Carroll, New Orleans, La., for appellee. Benjamin W. Yancey, Walter Carroll, Jr., New Orleans, La., of counsel.

Before HUTCHESON, Chief Judge, HOLMES, Circuit Judge, and DAWKINS, District Judge.

HOLMES, Circuit Judge.

This is a suit in admiralty for damages resulting from the collision of two vessels in the Mississippi River. On November 21, 1952, the tanker Queenston Heights, while ascending the river below New Orleans, struck and sank the motor vessel Star of Honduras. Action was brought by the owner of the Star against the Queenston, wherein the court below entered an interlocutory decree dividing the damages equally between the two vessels. D.C., 121 F.Supp. 280. The owner of the Star prosecutes this appeal. The primary question is whether or not the rule of equal division of damages should be applied to the facts in this case.

On the night above mentioned, the Star, a wartime steel LCI converted to a cargo vessel of 198 tons net, was proceeding south in the Mississippi River. She was fully laden with lumber and general cargo, and was being navigated by a Mississippi-River Pilot; her master and a lookout were on the bridge. There was no lookout on the bow. All of the vessel's running lights were properly displayed and were burning brightly. The Queenston, a T-2 tanker of 6301 net tons, was proceeding north along the east bank of the river. She was being navigated by a Mississippi-River Pilot; her master was in the chartroom, her watch officer and helmsman were on the bridge, and a lookout was on the bow. She was also displaying the proper lights.

Shortly after 1:00 A.M. on the same night, the Star reached Alberta Light, a green light on the west or right descending bank of the river, about 68 miles below New Orleans, in the reach between Tropical Bend and Bolivar Point. She was laying a course approximately 800 feet off and parallel to the west bank, and was making about nine miles per hour. When the Star was a short distance below Alberta Light, the pilot and other deck personnel sighted, two or three miles downstream, the red, green, and range lights of an up-bound vessel, which later proved to be the Queenston. The Star's running lights were rechecked at this time, and were found to be burning brightly. The Star observed the Queenston to bear slightly to the left and take a diagonal course, which, if continued, would bring her to the west

bank of the river. This diagonal course was continued by the Queenston up to the time of the collision.

Those aboard the Star correctly assumed that this maneuver was for the purpose of minimizing wave wash and damage to the vessels moored at an oil dock, which the Queenston was passing. In order to provide ample room for that maneuver, the Star, on an easy right rudder, moved about 200 feet closer to the west bank, straightened up, and continued southward. On observing that the Queenston had crossed the middle line of the river and was still continuing her diagonal course toward the west bank, the Star, under a hard right rudder, brought herself to about 400 feet from the west bank, straightened up, and continued at full speed. The Queenston, however, continued on her diagonal course without change or bearing at a speed of 15 miles per hour until the vessels were within 500 feet of each other. Thereupon, hearing a two-blast signal from the Queenston, a signal requesting a starboard-to-starboard passing, the Star, realizing that such a passing could not be negotiated, gave a four-blast danger signal, and reversed her engines on a hard right rudder. In less than a minute the Queenston rammed into the port bow of the Star without reversing her propellor, although she had reversed her engines a short time before the collision. The Star was beached, but subsequently sank, and was a total loss.

The trial court found many violations on the part of the Queenston amounting to gross negligence, which contributed to the collision, and its findings in that respect are not questioned by either party to this appeal. However, it found that the Star was also guilty of certain violations, and applied the rule of equal division of damages. The Pennsylvania, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148.

■ We agree with the district court that the actions of the Queenston leading to the collision are indefensible. The Queenston was guilty of gross negligence in proceeding at an excessive speed when she knew, or should have known, that the Star was a downbound vessel in a meeting situation; in the failure of her lookout to report the lights of the Star when sighted; in the failure of her pilot to recognize that the Star was downbound, as evidenced by the latter's proper navigation lights, which were seen by the pilot; in failing to keep to her right side of the channel; in altering her course before receiving a reply to her passing signal; in attempting to effect a starboard-to-starboard passing contrary to the Inland Rules; in failing to heed the Star's danger signal; and in failing to stop and reverse engines when her pilot became uncertain as to what the navigation lights of the Star indicated but was aware of their constant bearing for more than six minutes.

■ From the undisputed testimony, we are of the opinion that the failure to have a lookout on the bow of the Star did not actively contribute to the cause of the collision. The finding to the contrary by the court below was clearly erroneous. The only relation to the collision of the position of the Star's lookout is speculation that, had the lookout been in the bow, he might have heard a prior two-blast signal, which the Queenston claims to have sounded one-half minute before the two-blast signal that the Star did hear, which prompted the Star's danger signal; and that, if such a prior signal had been heard, the Star might have been able to take some action to avoid the collision. It is difficult to perceive what action the Star could have taken to avert the collision in view of the action on the part of the Queenston. We are in accord with the statement of the First Circuit, in Seaboard Tug & Barge v. Rederi AB/Disa, 213 F.2d 772, that the Supreme Court, in The Pennsylvania, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148, did not intend to establish a hard and fast rule that every vessel guilty of a statutory fault has the burden of establishing that its fault could not by any stretch of the imagination have had any causal relation to the collision,

no matter how speculative, improbable, or remote.

■ Even if the actions of the Star be considered as casting some minor fault on her, it does not follow that the Star must be condemned to pay half of the resulting damages. The Star did nothing which actively contributed to the collision. She was navigating under proper lights in the part of the river where she was required to be. Twice the Star pulled closer to the west bank, thereby leaving practically the whole reach of the river for navigation by the Queenston. When collision became imminent, the Star sounded the danger signal and reversed her engines, but to no avail. The Star had every right to assume that the larger vessel would observe the Inland Rules, 33 U.S.C.A. §§ 171–231, and act within the law. The Delaware, 161 U.S. 459, 16 S.Ct. 516, 40 L.Ed. 771; The Victory, 168 U.S. 410, 18 S.Ct. 149, 42 L.Ed. 519.

■■ Where the gross negligence of one vessel is wholly sufficient in itself to account for the collision, but the other vessel has committed a technical fault not shown to have contributed to the collision, and where the error of the latter is minor, doubt as to the latter's conduct will be resolved in her favor. Griffin on Collisions, p. 505. Furthermore, where the active fault of one vessel so flagrantly and heavily outweighs the passive faults of omission of the other vessel, the interests of justice are best served by condemning the more culpable vessel completely. The Great Republic, 23 Wall. 20, 90 U.S. 20, 23 L.Ed. 55; The Lord O'Neil, 4 Cir., 66 F. 77.

■ The facts in this case require the application of the rule announced in the just-cited cases. The Queenston was guilty of flagrantly active wrongs, and the chief blame was on her, while at most there was only some venial fault on the part of the Star, which fault bears so little proportion to the many faults of the Queenston that the Star should not share the consequences of this collision. Accordingly, the judgment appealed

from is modified and affirmed. Socony-Vacuum Oil Co. v. Smith, 5 Cir., 179 F. 2d 672; Harris v. Sabine Transp. Co., 5 Cir., 202 F.2d 537.

Modified and affirmed.