240 F.2d 606
 MISSISSIPPI VALLEY BARGE LINE COMPANY
v.
ESSO SHIPPING COMPANY, Claimant of THE S.S. QUEMADO LAKE.
ESSO SHIPPING COMPANY, Claimant of the S.S. Quemado Lake
v.
MISSISSIPPI VALLEY BARGE LINE COMPANY.
 No. 16202.
 United States Court of Appeals Fifth Circuit.
 February 13, 1957.
 Rehearing Denied April 2, 1957.
 
 Selim B. Lemle, Lemle & Kelleher, New Orleans, La., for the M/V New Orleans and Mississippi Valley Barge Line Co., appellants and cross-appellees.
 Alfred M. Farrell, Jr., New Orleans, La., Kirlin, Campbell & Keating, New York City, Terriberry, Young, Rault & Carroll, New Orleans, La., of counsel, for appellee.
 Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.
 HOLMES, Circuit Judge.
 This is a suit in admiralty, growing out of a collision on the Mississippi River between ascending and descending vessels, a tanker and a flotilla of barges propelled by a tug. The collision occurred in a bend of the river, and the trial judge found that the descending vessel, in spite of the danger, came on down the river without slackening its speed and, at or before the moment of collision, put its engines into full speed ahead, when it should have put them into reverse. From a holding that both vessels were at fault and that the damages should be divided, both sides have appealed, and the controversy here is waged upon the contention of each side that the other was solely to blame. Into the equation the doctrine of major and minor fault is also introduced.
 The accident occurred on the night of June 20th, 1952, and the ascending vessel was the tug New Orleans, which was shoving ahead a tow of 17 barges in five tiers. The overall length of this tow was 872 feet, and its width was 105 feet at the widest point. The combined length of the tow and towboat was 1,087 feet. The descending vessel was the Quemado Lake, which was loaded and drawing 30 feet forward and 31 feet 10 inches aft, or a mean draft of 30 feet 11 inches. The hour was about 9:15 p. m. The night was dark, but visibility was otherwise unimpaired by weather factors. Both vessels were properly showing all lights. The Quemado Lake was travelling downstream and averaging 17.23 miles per hour over the bottom. Navigation of the waters wherein this collision occurred is governed by the "Pilot Rules for the Western Rivers and the Red River of the North."
 The lower court held that the Quemado Lake was at fault in (a) proceeding at too high a rate of speed for a deep draft vessel in restricted waters and endeavoring to pass the New Orleans flotilla without reducing speed; (b) negligently navigating too close to the right descending bank, which caused the Quemado to smell the bank and to take a sheer to its left or alternatively, oversteering to the left, by reason of which the Quemado Lake did not make good a course down-river parallel with the right descending bank, but ran out toward the center of the river and struck the New Orleans; (c) not navigating in a manner so as not to embarrass the towboat New Orleans, which was encumbered with a large and heavy tow, citing The Mayumba, D.C., 21 F. 476; The Rose Culkin, D.C., 52 F. 328; The Lucy, 4 Cir., 74 F. 572; The Georgetown, D.C., 135 F. 854; The Westhall, D. C., 153 F. 1010; The Maine, D.C., 2 F. 2d 605; cf. Intagliata v. Shipowners & Merchants Towboat Co., 26 Cal.2d 365, 159 P.2d 1; and (d) continuing to go full speed ahead in the jaws of collision and not going full astern, citing The New York, 175 U.S. 187, 20 S.Ct. 67, 44 L.Ed. 126. The New Orleans flotilla, proceeding upstream at the slow speed of 3.8 M. P. H. as against 17.23 for the Quemado Lake, was held at fault for crossing the center line of the river onto the bend side, the stream being about 1800 feet wide at that point, citing The Stephen R. Jones, 5 Cir., 27 F.2d 208; The Norne, 5 Cir., 59 F.2d 145; The Pennsylvania, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148.
 We accept the trial court's findings of fact, and the majority concurs in its conclusion that the negligence of neither vessel was wholly sufficient to account for the accident, from which it follows that the damages should be divided; but the writer of this opinion thinks that the major fault of the descending vessel heavily and flagrantly outweighs the error of the towboat, and that justice requires the condemnation completely of the more culpable vessel. Compania De Maderas, etc., v. The Queenston Heights, 5 Cir., 220 F.2d 120.
 
 
 1
 Accordingly, the judgment appealed from is affirmed.
 
 
 2
 Affirmed.