Antoine **DANOS**, as owner of the **M/V**
**"Wm. D."**, Libellant,

v.

**THE** Tug Boat **HENRY LOUIS**, Her Engines, Etc., and Freddie Trosclair, Jr., owner of the Tug Boat "Henry Louis," etc., Respondent.

**No. 3344.**

United States District Court
E. D. Louisiana,
New Orleans Division.

March 4, 1958.

Harold Molaison, Gretna, La., George Smill, New Orleans, La., for libellant.

Faris, Leake & Emmett, Francis Emmett, New Orleans, La., for respondent.

J. SKELLY WRIGHT, District Judge.

This small collision occurred in the intersection of two of the many bayous which drain the marshland of Louisiana. On May 26, 1957, a loaded steel deck barge, being pushed by the Tug Henry Louis, was in collision with the disabled trawler Wm. D., then being towed on the hip by the trawler St. Theresa. The barge was undamaged. The owner of the Wm. D. and the St. Theresa brings these proceedings against the Tug Henry Louis and her owner for damages suffered by the Wm. D.

The collision occurred near the intersection of Bayou Cutler and Bayou St. Denis, the Henry Louis being outbound for the Gulf of Mexico via Bayou Cutler and Bayou St. Denis, and the St. Theresa being inbound from Bayou St. Denis into Bayou Cutler. Navigating from Bayou Cutler into Bayou St. Denis requires a 90° turn to starboard where the bayous intersect. There are no trees or high brush of any kind on the land forming the point of the turn which would prevent vessels intending to navigate the turn from seeing traffic coming in the opposite direction from the other bayou. The navigable waterway at the turn is 200 feet wide. The mud flats, which form the banks of the waterway on either side, are marked by buoys.

At the time of the collision, the low-powered St. Theresa was having considerable difficulty navigating with her tow. She was proceeding, however, on her own right-hand, or bend, side of the waterway. The Henry Louis, approaching the 90° right-hand turn into Bayou St. Denis and apparently seeking sea room to swing her tow, was navigating on her own left-hand, or bend, side of the waterway. The pilot of the Henry Louis testified that he saw the St. Theresa with her tow, the Wm. D., apparently stopped in the water having difficulty navigating. He claims that he blew the proper signals for a port-to-port passage, as well as the danger signal, before the port bow of his tow collided with the port bow of the Wm. D. It is admitted that neither the Wm. D. nor the St. Theresa made any signals of any kind.

As is customary in collision cases, the persons here responsible for the navigation of the colliding vessels earnestly argue for exculpation in giving their version of the collision. Usually it is necessary for the court, since vessels leave no tracks which can be placed in evidence, to choose the more credible of the testimony and fix fault based on that choice. Fortunately, to this collision there were two disinterested eye-witnesses who were at their fishing camp nearby with a full view of the scene.

These two disinterested witnesses confirm the fact that the St. Theresa and her tow, the Wm. D., were navigating on their extreme right-hand side of the waterway and that the Henry Louis, pushing her tow in the opposite direction, in attempting to make the 90° turn into Bayou St. Denis, came over on the St. Theresa side of the waterway, ran down a channel marker on that side, and then ran into the Wm. D.

■ Under the circumstances, it is clear that the fault which caused this collision was the fault of the Henry Louis in violating the Narrow Channel Rule. 33 U.S.C.A. § 210. The Henry Louis admits it saw the St. Theresa and the Wm. D. from a distance of at least a quarter of a mile with both tows moving at very slow speed. The Henry Louis is unable to explain, however, why she brought her tow over the channel marker on the wrong side of the waterway and into collision with the Wm. D. It was broad daylight, there was no current, there was no wind. Apparently the Henry Louis in navigating the 90° turn to starboard wanted her left-hand side of the waterway so as to facilitate her turn. She simply allowed the head of her tow to proceed too far before commencing the swing.

■ The only fault with which the St. Theresa may be charged is failure to sound signals. But there is no proof that her failure in this regard contributed to the collision. The Henry Louis was not unaware of the presence of the St. Theresa and her tow in the bend on her right side of the channel. Nor was the Henry Louis uncertain of the movements of the St. Theresa. In fact the pilot for the Henry Louis testified that the St. Theresa was stopped. Under the circumstances there was no reason why the Henry Louis should run her tow over on the wrong side of the channel into the Wm. D. Assuming the fault of the St. Theresa to be contributory in some degree, it easily comes within the narrow limits of the major-minor fault rule. Compania de Maderas, etc. v. The

Queenston Heights, 5 Cir., 220 F.2d 120, 1955 A.M.C. 797.

Several days after the collision, the Wm. D. sank at her moorings in the bayou in front of the home of her owner, libellant herein. It appears that some caulking in the hull, a foot and a half below the water line, required as a result of the collision, gave way and the vessel made enough water to sink before the danger could be discovered. It appears that the vessel was left unattended overnight and the vessel owner found his vessel on the bottom the following morning. Libellant attempts to charge respondent with the damage to the vessel caused by the sinking on the theory that the collision was the proximate cause of that damage as well. The proximate cause of the sinking, however, was not the collision but the intervening negligence of the owner in failing properly to tend his vessel. Sinram v. Pennsylvania R. Co., 2 Cir., 61 F.2d 767, 1932 A.M.C. 1537.

Decree for libellant.