Robert E. DILL, III, Libellant,

v.

PLAQUEMINE TOWING CORPORATION and James W. Banta d/b/a J. W. Banta Towing Company, THE GEORGE W. BANTA and THE ATCHAFALAYA, Respondents.

No. 3102.

United States District Court
E. D. Louisiana,
New Orleans Division.

Nov. 24, 1958.

Phelps, Dunbar, Marks, Claverie & Sims, Charles Dunbar, III, John Poitevent, New Orleans, La., for libellant.

Lemle & Kelleher, George B. Matthews, New Orleans, La., for respondents.

J. SKELLY WRIGHT, District Judge.

At approximately 11:30 P.M. on November 7, 1955, in the vicinity of Milepost 32–33 on the Plaquemine-Morgan City Alternate Route of the Gulf Intracoastal Waterway, near the junction with Old River, the crew boat All The Way [1] was in collision with the lead barge in tow of the M/V George W. Banta [2] and the M/V Atchafalaya.[3] The owner of the All The Way brought this libel for damage to that vessel and the owners of the tugs have cross-libelled for the damages sustained by them.

The Plaquemine-Morgan City Alternate Route is a most tortuous portion of the Gulf Intracoastal Waterway. In the vicinity of Milepost 32–33, it runs roughly north and south. At the point of the collision in suit, Old River leaves the Waterway from the west bank and flows in a westerly direction. For a northbound vessel continuing in the Waterway, as were the tugs and tow here, there is a gradual bend to the right slightly above the junction with Old River. Although the Waterway in this area is almost 300′ wide, the navigable portion thereof is about 175′.

At the time in question, the Banta, proceeding north, was pushing in tandem an integrated tow of three loaded tank barges, each measuring 250′ in length by 50′ in width drawing 8′ of water. In order to assist the Banta through the bends in the Plaquemine-Morgan City Alternate Route, the Atchafalaya joined the tow at Morgan City and placed a hawser from her stern to the bow of the lead barge. At the time the All The Way

1. The All The Way is a typical wood hull twin screw crew boat measuring approximately 45 feet in length with two engines developing a total of 320 HP.

2. The M/V George W. Banta is a pushboat or tug, 100 feet in length, 32 feet in beam, with engines developing 1,800 HP.

3. The M/V Atchafalaya is a single screw tug of 600 HP, approximately 65 feet in length and 20 feet in width.

came upon the scene, also traveling north, the tow was underway with no way on and the Atchafalaya was attempting to pull the head of the lead barge off the left ascending bank to shape the course of the tow for the bend ahead just past Old River Junction. In so doing, she was to starboard of the lead barge and her 5-inch hawser was stretched at approximately a right angle from the barge across part of the Waterway.

On seeing the Banta and her tow, the All The Way slowed down so that the tow could clear the junction with Old River before the All The Way turned left into it. When it appeared that the tow was slow moving and would take some time to clear the junction, upon the suggestion of the tool pusher of the drilling crew, which the All The Way was transporting to an offshore rig, the operator of the All The Way decided to speed up and go around, leaving the tugs and their tow to port. The All The Way was coming over to starboard to the right ascending bank of the Waterway to circle around the Atchafalaya when the operator noticed a red buoy up forward and to the right, apparently marking some stumps. Whereupon he determined to go between the Atchafalaya and the head of the lead barge, without realizing, of course, that a 5-inch hawser stretched taut four feet above the water barred his way. He cut sharply to port, and as he did, the All The Way came under the influence of the wave wash of the Atchafalaya, which wave wash brought the All The Way against the port bow of the lead barge of the tow. She slipped off the port bow of the barge into the hawser, which sheared her deckhouse, and then into the stern of the Atchafalaya.

Libellant, owner of the All The Way, contends that the respondents' tugs and tow obstructed the Waterway, that the situation which confronted the All The Way at the time of the collision was in effect a trap, not discernible through the exercise of reasonable care by other northbound vessels.[4] He maintains that the All The Way should have been advised by danger signal, or otherwise, of the obstruction to navigation caused by the Atchafalaya's effort to pull the head of the tow off the left ascending bank. He suggests that if the respondents' tugs had had proper lookouts, as required by the Inland Rules, 33 U.S.C.A. § 221, those tugs would have been aware of the presence of the All The Way and would have warned her. He states that instead of warning the All The Way of the danger, the Atchafalaya actually increased the hazard by her wave wash. He argues that the Atchafalaya should have made room for the All The Way to pass and then shut down her engines so that that passage would not be affected by wave wash. In sum, libellant states that the collision was the result of fault on the part of the Banta and the Atchafalaya and, consequently, both these vessels and their owners should repair the damage they have done.

Respondents, in defense and in support of their cross libel, lay the blame for this collision on the incompetence of the operator of the All The Way, on his impatience in failing to wait until the tow had cleared Old River Junction before attempting to make the turn to port into Old River, and on his negligence in attempting to navigate between the stern of the Atchafalaya and the lead barge of the tow under circumstances which would have indicated to a competent pilot that the Atchafalaya was in fact towing and that wave wash would drive the All The Way against the tow. Respondents also charge the All The Way with the obvious fault of attempting to pass without sounding the overtaking signal or waiting for an assent thereto.

■ The All The Way alone must be held responsible for this collision. As the

---

4. To vessels coming up astern, in accordance with the Inland Rules, 33 U.S.C.A. § 173, the Banta and the Atchafalaya were showing only a small white stern light on the after mast. In other words, the lights of the tugs, though in compliance with the Rules, did not disclose to overtaking vessels that the Banta was pushing and the Atchafalaya pulling.

overtaking vessel, she was required under the Rules to sound an overtaking signal and to hold back until she received assent for the passage. 33 U.S.C.A. § 203, Art. 18, Rule VIII. If she had complied with this basic rule of navigation, this collision would have been averted. In fact, the danger of collision would never have arisen. Harris v. Sabine Transp. Co., 5 Cir., 202 F.2d 537; Socony-Vacuum Oil Co. v. Smith, 5 Cir., 179 F.2d 672.

■ Although the manner in which vessels concerned with the offshore oil operations navigate would indicate otherwise, the fact remains that the Rules of the Road apply to such vessels as well as any other vessel. These rig tenders and crew boats, more often than not, are operated by illiterate persons who are unaware even that Rules of the Road exist. Take, for example, the operator of the All The Way. His testimony shows that while he had heard of the Rules of the Road, he was not certain what they were. As for the responsibilities of an overtaking vessel, he did not know that in the situation in suit the All The Way was the overtaking vessel. Consequently, he sounded no signals and attempted to pass without permission. Instinctively he realized that he should hold back until the tugs and tow had cleared Old River Junction, but he permitted his better judgment in this regard to be overborne by a suggestion from the tool pusher.

Once having made his decision to run around the tugs and tow, the operator of the All The Way would not be deterred, even by stumps. On seeing the red buoy, instead of stopping, he merely turned abruptly to port to run under the stern of the Atchafalaya, thus allowing the wave wash from that vessel to impale his boat on the port bow of the lead barge in the tow. Even he should have realized that wave wash might interfere with his navigation and set his vessel into a position of danger. He had just experienced considerable difficulty maneuvering through the wave wash of the Banta. From that experience alone, he should have realized that wave wash from the Atchafalaya might deal with him similarly.

Libellant cites cases [5] holding it fault to obstruct navigation and to fail to give adequate warning of such obstruction. But those cases all relate to more or less permanent obstructions. None of them deals with a situation where a tug and tow have temporarily partially obstructed a navigable channel while attempting to shape the course of the tow for the bend ahead. What respondents' vessels were doing here was normal procedure in such situations. It may be that, because of the darkness and the lights which the Banta and Atchafalaya were showing,[6] an overtaking vessel would not be aware that a hawser was stretched across the channel. If the All The Way, however, had sounded a passing signal and waited for a response, she would have been in no danger from such hawser, nor from the wave wash of the Atchafalaya.

The failure of the tugs to post lookouts [7] or to sound danger signals did not contribute to this collision. The presence of the All The Way in the vicinity was known, at least to the Banta. It was her intentions that were unclear and uncommunicated. The evidence from both the pilot on the Banta and from the operator of the crew boat shows that when the All The Way started to go around the tow to make her left turn into Old River, she headed to starboard so as to leave the Atchafalaya as well as the tow to port. It was only at the last moment, when the operator of the All The Way realized that she might be standing into stumps, that he abruptly brought his boat to port into the wave wash of the Atchafalaya and thence against the lead barge of the tow. He was in no danger from the tugs or tow before he made that move. Once he made

5. Gulf Atlantic Transp. Co. v. Becker County Sand & Gravel Co., D.C., 122 F. Supp. 13; Agger v. The Beatrice and Rose, D.C., 84 F.Supp. 761; The Howard, D.C., 253 F. 599.

6. See Note 4.

7. See Compania de Maderas, etc. v. The Queenston Heights, 5 Cir., 220 F.2d 120, 122.

it, and entered the wave wash of the Atchafalaya, no danger signal, or lookout on the tugs or tow, could have been helpful in wresting the All The Way from the situation in which he had placed her.

Decree for respondents in all respects.