**J. RAY McDERMOTT & CO., Inc.,**
**Libellant,**
**v.**
**DEPARTMENT OF HIGHWAYS, STATE**
**OF LOUISIANA, THE Tug CAPTAIN**
**COOTIE, Dolty J. Cheramie, Jr., and**
**Raoul A. Savoie, Respondents.**

**No. 3740.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Jan. 26, 1960.

Faris, Leake & Emmett, New Orleans,
J. Y. Gilmore, Jr., New Orleans, proctors for libellant.

George W. Lester, Baton Rouge, proctor for Dept. of Highways and Raoul A. Savoie.

Deutsch, Kerrigan & Stiles, William S. Stone, Jack G. Carinhas, New Orleans, proctors for respondent Dolty J. Cheramie, Jr.

J. SKELLY WRIGHT, District Judge.

For eighteen years Raoul Savoie has been the bridge tender of the bridge at Bourg, Louisiana, over the old Intracoastal Waterway. On November 2, 1957, he made a mistake. He lowered the bridge on the extended boom of the barge Pile Driver No. 5 as it was passing through the draw in tow of the tug Captain Cootie. Libellant brings this suit for damage suffered by Pile Driver No. 5 against the Captain Cootie, her owners, and Raoul Savoie.[1]

At Bourg, the old Intracoastal Waterway, now called the Company Canal, runs north and south. Just south of the bridge at Bourg the canal enters Bayou Terrebonne. Some distance northward the canal enters the Gulf Intracoastal Waterway. The bridge over Company Canal is equipped with a floodlight, mounted on the bridge house to illuminate the area beneath the span, and the span itself carries a light which is red when the span is down and green when raised.

1. Savoie's employer, Department of Highways, State of Louisiana, has been dismissed from the case. J. Ray McDermott & Co., Inc. v. Department of Highways, State of La., 5 Cir., 267 F.2d 317.

■ The tug Captain Cootie[2] approached the bridge from the north towing, on a short bridle and hawser, a deck barge[3] followed by Pile Driver No. 5.[4] The night was clear and visibility was good. The master of the Cootie was at her wheel and the only other member of her crew was below. Although there is some dispute in the evidence as to exactly how the tug and tow were lighted, there is no question but that Raoul Savoie saw all three units. Any failure to comply in every detail with the pertinent lighting requirements would not, therefore, be a proximate cause of the collision.[5] In any event, it is clear that the tug had running lights, three white towing lights at her masthead and a light at the base of her aftermast illuminating the lead barge. The barges each displayed a white light at head and stern, in the usual locations, at least 12 feet above the water.[6] Savoie maintains that the boom of the Pile Driver No. 5 extended 75 feet over the stern of the vessel, that it was unlighted and that is the reason why he lowered the bridge on it. The proof shows that the stern light on the Pile Driver No. 5 was on the boom approximately over the stern log of the barge and that the boom itself ran aft off the deck of the barge at a 45° angle to a point 30 to 35 feet past its stern.

As the Captain Cootie and her tow approached the bridge from the north, she sounded three blasts of her horn. The bridge opened, showed its green light, and the tug and tow then proceeded through the span in the center of the channel. Savoie testified that he watched the tug and lead barge clear the span and that he began lowering the bridge when the bow of the Pile Driver No. 5 was through the draw and its stern at the beginning of the fence approach to the draw. Rather than wake up the bridge's neighbors, he sounded no signal when he commenced to lower the bridge.[7] The bridge takes two minutes to lower. Less than one-half minute elapsed before the collision occurred. Although Savoie testified he did not hear it, the master of the Captain Cootie sounded a danger signal when he saw the bridge being lowered on his tow.

The allegations of fault directed at the Captain Cootie are not supported by the evidence or by the navigation rules governing the towage of vessels. There is no requirement that a boom extending up and over the stern of a barge be lighted. Maybe there should be. But until there is such a requirement, it would be fault to place lights on the boom. In darkness vessels identify, and navigate with respect to, other vessels by their lights, the lights required by the navigation rules. Unless the lighting requirements of these rules are strictly complied with, a navigator, or anyone concerned with movement of vessels, will have no way of knowing what confronts him until he is able to make out the forms of the vessels themselves.

■ Libellant is not persuaded that the Captain Cootie sounded a danger signal when her captain saw the bridge was being lowered on the Pile Driver No. 5. Be that as it may, the fact remains that there was very little time to do anything once the bridge started coming down. It could be that the Cootie's skipper, in that last half minute, with all his other duties concerned with navigating ahead

2. The Captain Cootie is a steel tug 45.9 feet in length by 14.9 feet in beam by 5.8 feet in depth. She is powered by a single engine developing about 300 horsepower.

3. The deck barge measured 110 feet by 30 feet by 7 feet.

4. The Pile Driver No. 5 is an undocumented steel barge 75 feet in length by 24 feet in width by 6 feet deep, equipped with a pile driver, leads and various

equipment and machinery. The pile driver boom, when not in operation, extends about 30 to 35 feet aft of the stern of the barge.

5. Smoot Sand & Gravel Corp. v. Baltimore Steam Packet Co., 102 U.S.App.D.C. 97, 250 F.2d 422; Lind v. United States, 2 Cir., 156 F.2d 231.

6. See Article 3, Inland Rules, 33 U.S.C.A. § 173; 33 C.F.R. § 80.16a.

7. See 33 C.F.R. § 203.240.

and getting the tow through the draw, should have seen the bridge coming down in time to alert the thoughtful, but unseeing, bridge tender. It could also be that he should have had his mate on deck to watch astern as the tow came through the draw. But any dereliction on the part of the Captain Cootie in this connection would be minimal compared to the simple, but gross, fault in lowering a bridge on a vessel under it. Compania De Maderas, etc. v. The Queenston Heights, 5 Cir., 220 F.2d 120.

Decree accordingly.