Vivian Callaway PEED, Libelant,

v.

THE JESSIE J. and THE TEE MAE, their engines, tackle, apparel, furniture, etc., in rem, and F. & S. Boat Corp., O. E. Christy, and Wallace Carline, in personam, Respondents.

No. 4168.

United States District Court E. D. Louisiana, New Orleans Division.

March 8, 1961.

---

Phelps, Dunbar, Marks, Claverie & Sims, James B. Kemp, Jr., Thomas W. Thorne, Jr., New Orleans, La., for libelant.

Faris, Leake & Emmett, J. Y. Gilmore, Jr., New Orleans, La., for respondents.

J. SKELLY WRIGHT, District Judge.

On the early morning of October 29, 1958, the fishing vessel Vivian Lee, eastbound in the Gulf Intracoastal Waterway near New Orleans, cut across the bows of two westbound tugs, the Tee Mae and the Jessie J., striking both before ramming into the bank on her own left-hand side of the waterway. In these proceedings the owners of the Vivian Lee sue for her damages.

The Tee Mae was a steel push-type tug, 47 feet long and 17 feet wide, powered by two 165-horsepower engines. She carried a crew of two. The Jessie J. was a model bow steel tug, 51 feet long and 17 feet wide, powered by two engines developing 600 horsepower. She also had two in her crew. The Vivian Lee was a wooden fishing vessel, 55 feet by 18 feet. Her power is not disclosed, but her speed at full ahead is 10 MPH.

At the time of the collision the Jessie J. and the Tee Mae were made up together, side by side, with both showing all required running lights. Because of her superior power, the navigation of the two vessels was controlled by the Jessie J., although the engines of the Tee Mae were being used and the captain of the Tee Mae was in her wheelhouse to assist in the navigation of the two vessels if required. The night was dark and, while there is some dispute as to visibility, the navigators of all vessels testified that they were able to see the lights of traffic in, as well as the banks of, the waterway without difficulty. The collision occurred in a straight reach of the channel, the navigable portion of which is approximately 200 feet wide.

When the Jessie J. first sighted the Vivian Lee, both vessels were on their proper, or right, side of the narrow channel,[1] favoring the middle. When the vessels were 1,400 feet apart, the Jessie J. sounded a one-blast passing signal

---

1. 33 U.S.C.A. § 210, Art. 25, Inland Rules.

which was not answered. Instead, the Vivian Lee seemed to be pulling over to her left side of the waterway. The Jessie J. and the Tee Mae first slowed from full speed, 8 to 9 MPH, to half speed, then stopped engines, and then, when the Vivian Lee continued to move over to her left side of the waterway, the Jessie J. and the Tee Mae started up under hard right rudder and ran aground on the extreme north side of the waterway. While in that position, the Tee Mae sounded a danger signal. Approximately a minute later, still cutting across the channel at 10 MPH, the bow of the Vivian Lee scraped along the stem of the Jessie J., struck the starboard pushing knee of the Tee Mae, and then rammed into the north bank.

At the time of the collision, an inexperienced 16-year-old boy was at the wheel of the Vivian Lee. He was the only person in the wheelhouse, her skipper being in his room preparing for bed. The young man at the wheel of the Vivian Lee was apparently confused on seeing the lights of the Jessie J. and the Tee Mae coming toward him. Yet he did nothing but watch them until a few seconds before the collision when he called his brother, the captain of the Vivian Lee. When the captain arrived in the wheelhouse, the vessels were only 40 to 50 feet apart and collision was inevitable. Captain Peed testified that it was he who gave the Vivian Lee hard left rudder. He stated that when he came in the wheelhouse the Jessie J. and the Tee Mae were in the middle of the waterway favoring the south side. As stated above, however, the Jessie J. and the Tee Mae were already aground on the extreme north side of the waterway. It is apparent that, at the time Captain Peed came into the wheelhouse, the Vivian Lee was already under hard left rudder and that she continued under hard left rudder for the remaining 40 to 50 feet before collision.

The faults of the Vivian Lee run the gamut. She was in the inexperienced hands of an incompetent young man who admittedly failed to hold his vessel to his own right-hand side of the channel,[2] failed to sound the passing signal or to answer the passing signal initiated by the approaching flotilla,[3] failed to sound a danger signal,[4] slow his vessel or stop or reverse his engines in the face of danger.[5] In all probability, in his confusion he placed the Vivian Lee under hard left, instead of right, rudder, shearing her across the channel, and his brother was unable to right her in the few seconds he was in the wheelhouse before collision.

Since the faults of the Vivian Lee are so gross and since they fully account for the collision, the navigation of the Jessie J. and the Tee Mae need not be narrowly scrutinized.[6] Certainly the make-up of the two vessels is not to be condoned. Unquestionably, vessels so made up are not as responsive to wheel changes as a single vessel, and the danger of confusion between the helmsmen on each cannot be denied.

Here, however, the only confusion was on the Vivian Lee. When the navigators of the Jessie J. and the Tee Mae saw the Vivian Lee coming across the channel, they proceeded to stop their vessels by grounding them on their extreme right-hand side. It is true that the confusion on the Vivian Lee was probably caused by the make-up of the two vessels. Whether a more experienced helmsman, on seeing the lights of these two vessels, would have appreciated the situation is beside the point. Here the helmsman of the Vivian Lee admittedly did not know what was coming. Yet he proceeded on, full speed ahead without signalling or an-

---

2. 33 U.S.C.A. § 210, Art. 25, Inland Rules.

3. 33 U.S.C.A. § 203, Art. 18, Rule I, Inland Rules.

4. 33 U.S.C.A. § 203, Art. 18, Rule III, Inland Rules.

5. The New York, 175 U.S. 187, 201, 207, 20 S.Ct. 67, 44 L.Ed. 126.

6. The City of New York, 147 U.S. 72, 85, 13 S.Ct. 211, 37 L.Ed. 84; Pure Oil Company v. Jack Neilson, Inc., D.C.E.D. La., 135 F.Supp. 786, 789.

swering signals, and, most important of all, without holding his right side of the channel.

Under the circumstances, responsibility for this collision must be placed on the Vivian Lee, and any fault which may rest on the Jessie J. or the Tee Mae must be held to be noncontributing.[7]

Judgment accordingly.

---

7. The Great Republic, 23 Wall. 20, 90 U.S. 20, 23 L.Ed. 55; Compania De Maderas, etc. v. The Queenston Heights, 5 Cir.,

220 F.2d 120; Pure Oil Company v. Jack Neilson, Inc., supra, 135 F.Supp. 789.