**TRINIDAD CORPORATION, Claimant of THE Tankship LYONS CREEK, Appellant,**

v.

**INDIAN TOWING COMPANY, Inc., Appellee.**

No. 18598.

United States Court of Appeals Fifth Circuit.

Aug. 3, 1961.

Alfred M. Farrell, Jr., Jos. M. Rault, Benjamin W. Yancey, New Orleans, La., Terriberry, Rault, Carroll, Martinez & Yancey, New Orleans, La., of counsel, for appellant.

Cornelius Van Dalen, Christopher Tompkins, New Orleans, La., Deutsch, Kerrigan & Stiles, New Orleans, La., of counsel, for appellee.

Before TUTTLE, Chief Judge, and CAMERON and WISDOM, Circuit Judges.

CAMERON, Circuit Judge.

This appeal is from an interlocutory decree in favor of libelant below, Indian Towing Company, Inc., for damages sustained in the capsizing of its tow boat Comanche when she struck a pier of the Huey P. Long Bridge on the Mississippi River on the night of March 4, 1956. The lower court found that the occurrence was due solely to the negligence of the Lyons Creek, owned by the Trinidad Corporation.

Briefly, the facts as found by the trial court are these: The Lyons Creek was a 6,000 horsepower turbo-electric tankship. The Comanche was a 500 horsepower single screw diesel tugboat. At the time of the accident the Comanche was headed downstream on the Mississippi River from Baton Rouge, while the Lyons Creek was headed upstream from New Orleans. The Comanche was pushing a tow consisting of two loaded tank barges, the KY–17 and KY–18, in tandem stern-to-stern. She displayed red and green running lights on top of the pilot house, and two red lights in a vertical line astern. The lead barge, the KY–18, carried red running lights on her port side and green lights on her starboard bow, with an amber light in the center.

At about 10:15 P.M. on March 4th, the Comanche flotilla arrived at Avondale Bend several miles above the Huey P. Long Bridge. She emerged from the bend favoring the west side of the river when she sighted the upbound Lyons Creek, which was then about two miles below the bridge and apparently planning to pass beneath the west span of the bridge. The Comanche adjusted her course to port, toward the middle of the river, and began shaping up to pass beneath the east span of the bridge. She simultaneously reduced her engine speed to half ahead to minimize the effect of the wave wash which would emanate from the upbound Lyons Creek. Meanwhile, the Tugboat San Bernard, with a quarterboat in tow, was also heading downstream and was preparing to overtake and pass the Comanche. The San Bernard showed white towing lights in a vertical line some twenty-two feet above water and red and green running lights about fifteen or sixteen feet above water on each side of her

pilot house. The quarterboat itself had a green light on her starboard bow and an amber light on her port bow.

As the Lyons Creek cleared the west span of the bridge, the Comanche was approximately one and one-eighth miles above the bridge and navigating slightly east of midstream, and approximately five hundred feet to the eastward of the Lyons Creek's course line. The San Bernard tow was approximately two hundred fifty feet to port and astern of the Comanche. The Lyons Creek continued to come on without reducing speed, and at a point approximately one-half mile above the bridge, she passed the Comanche starboard to starboard, less than five hundred feet off, at full ahead. Just after the Lyons Creek passed, the Comanche encountered heavy wave wash and turbulence. The waves washed over the decks of her barges and set up severe stresses on the Comanche's face wires, which bound her securely to her tow.

As the result of this wave wash action, the Comanche's starboard towing gear was caused to part, and she lost control of her tow in the swift current. Every effort was made to regain control of the tow, at least sufficient to prevent the flotilla from striking the bridge pier. Sternway could not be gathered in time, however, and the Comanche was swept downstream at an angle toward the abutment of the bridge. When this maneuver to regain control of the tow failed, the captain of the Comanche attempted to free the tug from her barges by chopping the towing lines, but was unable to do so in time. The lead barge struck the abutment and immediately thereafter the tug herself struck the pier. The remaining wires and lines parted and the Comanche rolled over to port and capsized as her barges drifted freely downstream. Although her entire four man crew leaped into the river, only the master and mate survived.

The San Bernard, while abreast of the Comanche's tow, was not aware of the Comanche's difficulty and therefore increased her speed and continued on. At all material times the master of the Lyons Creek was on the port wing of the bridge, but wholly failed to see either the Comanche or San Bernard tow and could not even recall having looked to starboard in the vicinity of where those flotillas were. In fact, neither the third mate, the pilot, the bow lookout nor anyone else aboard the Lyons Creek saw those vessels. At the time of the passing the Lyons Creek was traveling at full ahead, or at least 15.8 miles per hour against a four to five mile current which then prevailed.

Both before and after the casualty the Lyons Creek had made a practice of reducing her speed to half ahead when passing other vessels, and those in charge of her navigation testified that they would have slowed to half ahead had they been aware of the presence of the Comanche or the San Bernard.

Based upon these findings of fact the lower court concluded that the Lyons Creek had passed the Comanche at an excessive rate of speed, too close aboard, so that her wave wash forced the Comanche's tow to break up and go out of control, that those in charge of the Lyons Creek had failed to keep a proper lookout, as evidenced by their failure to see two fully lighted tows; that the Comanche was properly rigged and free from fault, and the Lyons Creek was solely responsible for the damages arising out of the capsizing of the Comanche.

Basically, this case presents an attack by the appellant upon the findings of fact of the trial court, the appellant in essence asserting such findings to be "clearly erroneous." Under settled principles of law,[1] which we have recently referred to as the "concept of F.R.Civ.P. 52 (a) [28 U.S.C.A.] judicially engrafted onto the admiralty procedure," O/Y Fin-

---

1. McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20; Ohio Barge Lines, Inc. v. Ohio Transport, Inc., 5 Cir., 1960, 280 F.2d 448; Kwong v. Occidental Life Ins. Co. of California, 5 Cir., 1959, 273 F.2d 691; Manufac-

turer's Casualty Insurance Co. v. Intrusion-Prepakt, Inc., 5 Cir., 1959, 264 F. 2d 758; and Burgher v. Campbell, 5 Cir., 1957, 244 F.2d 863. See also Arkansas Valley Feed Mills, Inc. v. Fox Deluxe Foods, Inc., 8 Cir., 1960, 273 F.2d 804.

layson Forssa A/B v. Pan Atlantic Steamship Corp., 5 Cir., 1958, 259 F.2d 11, 12, a court of review is bound by the findings of a trial court in a non-jury case and they will not be set aside unless it is clearly demonstrated that such findings are without adequate credible evidentiary support in the record or were induced by an erroneous view of the law. And the burden of demonstrating this is upon the party seeking to have the findings overturned. Cedillo v. Standard Oil Co., 5 Cir., 1961, 291 F.2d 246.

■ After a careful study of the voluminous record before us we are convinced that the showing made contained ample evidence of the character necessary to support and uphold these findings. Since this is true, we will not set aside the findings of the trial court.

The appellant also charges that certain lights on the Comanche and her lead barge failed for various reasons to comply with the Pilot Rules for Western Rivers, claiming that such failure "condemns the Comanche and exonerates the Lyons Creek." We are unable to accept this argument. We feel, as did the court below, that there was no causal connection between the slight nonobservance of the rules regulating the height of the lights and the total failure of those in charge of the Lyons Creek to see the two downbound tugs, Comanche and San Bernard and their tows. There is an adequate showing that the Comanche's lights were sufficient to alert the Lyons Creek, had the Lyons Creek maintained a proper and vigilant lookout. In fact, the San Bernard, whose lighting amply complied with the Rules, was not seen by the Lyons Creek although she was substantially abreast of the Comanche when the Lyons Creek passed at an excessive speed. We think that the trial court correctly found that " * * * the fact that [the Comanche's] lights were less than 8 feet from the water is not material." [187 F.Supp. 778.] Cf. Lind et al. v. United States, 2 Cir., 1946, 156 F.2d 231, 233; The Smoot Sand & Gravel Corp. v. Baltimore Steam Packet Co., 1957, 102 U.S.App.D.C. 97,

250 F.2d 422; and The Transfer No. 8, 2 Cir., 1928, 25 F.2d 628.

In an attempt to demonstrate the improbability that the "wave wash," such as that created by the Lyons Creek, would break up a properly rigged tow, appellant showed both the trial court and this Court moving pictures taken at the point of the casualty on a different date. However, we are not persuaded by the pictures, considered in connection with the other evidence in this case, that the trial court's findings on this point were clearly erroneous.

It appearing that the court below committed no reversible error, its judgment is

Affirmed.